IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 28, 2026

**KNOX COUNTY TENNESSEE ET AL. v.
DELINQUENT TAXPAYERS ET AL.**

**Appeal from the Chancery Court for Knox County**
No. 201957-2       Christopher D. Heagerty, Jr., Chancellor

———————————————————

**No. E2026-00812-COA-T10B-CV**

———————————————————

This is a recusal appeal filed by the *pro se* petitioner relative to the underlying delinquent taxpayer action. Because the petitioner has not demonstrated a factual basis warranting recusal, we affirm the judgment of the trial court denying the motion to recuse.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal as of Right;
Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and VALERIE L. SMITH, JJ., joined.

Douglas Vernon, Powell, Tennessee, Pro Se.[1]

**OPINION**

I. Factual and Procedural Background

This case arises from a complaint filed by Knox County, Tennessee ("Knox County"), against Douglas Vernon ("Petitioner"), seeking judicial sale of Petitioner's real property located on Irwin Road in Powell, Tennessee ("the Property"), due to Petitioner's failure to pay real property taxes. Following protracted litigation spanning nearly four years, the Knox County Chancery Court ("trial court") entered a memorandum opinion and order on August 6, 2025, directing that the Property be sold pursuant to applicable statutory law regarding delinquent real property taxes. Petitioner subsequently filed a motion to alter

---

[1] Knox County did not file a brief or otherwise appear in this appeal.

or amend the order, which the trial court denied in a written order entered on October 2, 2025. Accordingly, the Property was sold at public sale, the report for which was filed on October 23, 2025.

On October 24, 2025, Petitioner filed a motion for stay of execution of both the August 5, 2025 and October 2, 2025 orders. However, before Petitioner's motion for stay could be resolved, Petitioner filed a motion to recuse the chancellor on October 31, 2025, claiming that the chancellor had shown "prejudice" against Petitioner throughout the litigation. Before the trial court ruled on either motion, Petitioner filed a notice of appeal, pursuant to Tennessee Rule of Appellate Procedure 3, in this Court on November 3, 2025. On November 17, 2025, the trial court entered a memorandum opinion and order determining that because Petitioner had filed a notice of appeal to this Court, the trial court no longer maintained jurisdiction to rule on Petitioner's motions for stay and recusal.

On March 2, 2026, this Court entered an order in Petitioner's Rule 3 appeal, which had been docketed as No. E2025-01721-COA-R3-CV, remanding the case to the trial court for consideration of Petitioner's motions for stay and for recusal. Accordingly, the trial court entered a detailed memorandum opinion on May 5, 2026, addressing each point in Petitioner's motion to recuse and ultimately denying the motion. Petitioner timely appealed the trial court's order denying recusal.

## II. Standard of Review

We recognize that Petitioner is a *pro se* litigant and respect his decision to proceed self-represented. Regarding self-represented litigants, this Court has explained:

> *Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden. Conducting a trial with a pro se litigant who is unschooled in the intricacies of evidence and trial practice can be difficult. Nonetheless, trial courts are expected to appreciate and be understanding of the difficulties encountered by a party who is embarking into the maze of the judicial process with no experience or formal training.

*Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) (internal citations omitted). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003). This Court must "be mindful of the boundary between fairness to a *pro se* litigant and unfairness to the *pro se* litigant's adversary." *Id.* Furthermore, "[p]ro se litigants are not . . . entitled to shift the burden of litigating their case to the courts." *See Chiozza v. Chiozza*, 315 S.W.3d 482, 487 (Tenn. Ct. App. 2009) (quoting *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn.

Ct. App. 2000)).

With respect to recusal motions filed pursuant to Tennessee Supreme Court Rule 10B, our Supreme Court has instructed:

> "Tennessee litigants are entitled to have cases resolved by fair and impartial judges." *Cook v. State*, 606 S.W.3d 247, 253 (Tenn. 2020) (citing *Davis* [*v. Liberty Mut. Ins. Co.*], 38 S.W.3d [560,] 564 [(Tenn. 2001)]); *see also State v. Griffin*, 610 S.W.3d 752, 757-58 (Tenn. 2020). To preserve public confidence in judicial neutrality, judges must be fair and impartial, both in fact and in perception. *Cook*, 606 S.W.3d at 253; *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998). To these ends, the Tennessee Rules of Judicial Conduct ("RJC") declare that judges must "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." Tenn. Sup. Ct. R. 10, RJC 1.2. Another provision declares that judges "shall uphold and apply the law, and shall perform all duties of judicial office fairly and impartially." *Id.*, RJC 2.2.

> To act "impartially" is to act in "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.*, Terminology. "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *Id.*, RJC 2.11(A).

> Rule of Judicial Conduct 2.11 "incorporates the objective standard Tennessee judges have long used to evaluate recusal motions." *Cook*, 606 S.W.3d at 255. "Under this objective test, recusal is required if 'a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality.'" *Id.* (quoting *Davis*, 38 S.W.3d at 564-65).

> The intermediate appellate courts have explained that the proponent of a recusal motion bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case. *Tarver v. Tarver*, No. W2022-00343-COA-T10B-CV, 2022 WL 1115016, at *2 (Tenn. Ct. App. Apr. 14, 2022). A trial judge has a duty to serve unless the proponent establishes a factual basis warranting recusal. *Raccoon Mtn. Caverns and Campground, LLC v. Nelson*, No. E2022-00989-COA-T10B-CV, 2022 WL 3100606, at *3 (Tenn. Ct. App. Aug. 4, 2022) (quoting *Rose v. Cookeville Reg'l Med. Ctr.*, No. M2007-

02368-COA-R3-CV, 2008 WL 2078056, at *2 (Tenn. Ct. App. May 14, 2008)).

*Adams v. Dunavant*, 674 S.W.3d 871, 878-79 (Tenn. 2023). "To disqualify [a trial judge], prejudice must be of a personal character, directed at the litigant, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from . . . participation in the case." *Alley v. State*, 882 S.W. 2d 810, 821 (Tenn. Crim. App. 1994) (internal quotation marks and citations omitted).

Tennessee Supreme Court Rule 10B also governs appeals from orders denying a motion to recuse. The standard of review respecting such orders is *de novo* with no presumption of correctness. *See* Tenn. Sup. Ct. R. 10B, § 2.01. Regarding the scope of review in a Rule 10B appeal, this Court has explained:

> [T]he only order this Court may review on a Rule 10B accelerated interlocutory appeal is the trial court's order denying the motion to recuse. *Duke* [*v. Duke*], 398 S.W.3d [665,] 668 [(Tenn. Ct. App. 2012)]. Under Rule 10B, we may not "review the correctness or merits of the trial court's other rulings. . . ." *Id*.; *see also Stark* [ *v. Stark*], [W2019-00901-COA-T10B-CV,] 2019 WL 2515925, at *8 [(Tenn. Ct. App. June 18, 2019)] ("[W]hether the trial judge erred in his rulings on Husband's motions is not an issue in this limited, interlocutory appeal.").

*Adkins v. Adkins*, No. M2023-00384-COA-T10B-CV, 2021 WL 2882491, at *17 (Tenn. Ct. App. Apr. 15, 2021). Ergo, the narrow issue before us in this Rule 10B appeal is "whether the trial court erred in denying the motion for recusal." *See McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *1 (Tenn. Ct. App. Feb. 11, 2014) (internal citation omitted). We may, in our discretion, decide the appeal without oral argument. *See* Tenn. Sup. Ct. R. 10B, § 2.06.

## III. Analysis

Following our careful review of the petition and attachments, we determine that our disposition of this matter does not require an answer, additional briefing, or oral argument, and we therefore elect to act summarily on this appeal in accordance with sections 2.05 and 2.06 of Rule 10B. *See* Tenn. Sup. Ct. R. 10B, § 2.05 ("If the appellate court, based upon its review of the Petition for recusal appeal and supporting documents, determines that no answer from the other parties is needed, the court may act summarily on the appeal. Otherwise, the appellate court shall order that an answer to the petition be filed by the other parties. The court, in its discretion, also may order further briefing by the parties within the time period set by the court."), § 2.06 ("An accelerated interlocutory appeal shall be decided by the appellate court on an expedited basis. The appellate court's decision, in the court's discretion, may be made without oral argument.").

In his petition for recusal appeal, Petitioner has raised several arguments that are not within the scope of our review because he seeks review of trial court decisions other than the order denying recusal. *See Adkins*, 2021 WL 2882491, at *17 (quoting *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012)) ("[T]he only order this Court may review on a Rule 10B accelerated interlocutory appeal is the trial court's order denying the motion to recuse."). For example, Petitioner asserts that the trial court "rushed to conclusion" and erred when it granted Knox County's motion for judgment on the pleadings on August 6, 2025, "before any answer was on file." In support, Petitioner delineates several statements purportedly made by the chancellor during a hearing relative to the motion for judgment on the pleadings conducted on April 17, 2025.

Petitioner further contends that he was denied the opportunity to "test" Knox County's evidence "at every procedural stage" of the underlying litigation. To support this argument, Petitioner recounts conversations between himself and the chancellor during two motion hearings. Additionally, Petitioner claims that the trial court (1) improperly "allocated burdens" to Petitioner that should have been required of Knox County in an order entered in June 2023; (2) imposed "unreasonable deadlines" upon Petitioner throughout the proceedings; (3) improperly "advocated" for Knox County "from the bench" during a hearing conducted in September 2025; (4) applied an improper standard of review for *pro se* litigants and expanded "the scope of Tennessee Code Annotated § 1-3-105" in an order entered on July 15, 2025; (5) improperly denied Petitioner an opportunity to be heard during the April 27, 2026 hearing on Petitioner's motion to recuse and (6) improperly accepted Knox County's "unsworn statement in a March 2023 filing" regarding the amount of tax debt owed by Petitioner. Because our review is limited to the trial court's order denying recusal, we may not review the merits of the trial court's actions or rulings related to motion hearings, prior orders, or other proceedings. *See Adkins*, 2021 WL 2882491, at *17 (quoting *Duke*, 398 S.W.3d at 668). Accordingly, Petitioner's arguments regarding those issues are beyond our review in this accelerated appeal.

In the motion to recuse submitted to the trial court, Petitioner presented several claims related to the chancellor's purported conduct during the first hearing in the underlying litigation. Petitioner specifically alleged that the trial court had exhibited "prejudice" against him by: (1) determining that a case cited by Petitioner was not related to the issues at bar; (2) arguing with and objecting to Petitioner's points during the hearing; (3) stating, "contrary to law," that Petitioner was a "citizen of this state" "no matter what" Petitioner had to say about Petitioner's status; (4) making "false statements of fact" regarding Petitioner's water and electric bills; (5) "pushing for a rush for judgment"; (6) declining to hear testimony during a motion hearing; and (7) "moving *sua sponte*" to set an evidentiary hearing. Petitioner further alleged that during the second hearing, the trial court exhibited prejudice against Petitioner by (1) expecting Petitioner to cross-examine witnesses he had "never been introduced to," (2) interrupting Petitioner while he was speaking, (3) stating that this case "needs to be finished," and (4) giving notice of the action

to the Attorney General even though the plaintiff was listed on the style as the "State of Tennessee."

In addition to Petitioner's contentions regarding the two aforementioned hearings, Petitioner alleged that the trial court had shown prejudice against Petitioner by "flipping the burden of proof" from Knox County to Petitioner; interpreting legal terms in a manner contrary to case law; subverting the rules in the court's August 6, 2025 order on Knox County's motion for judgment on the pleadings; and overruling Petitioner's first and second "Judicial Notice of Adjudicative Facts with Claim of Rights" without justification.

In the order denying Petitioner's motion to recuse, the trial court began its analysis as follows:

> The Defendant's Motion to Recuse appears to recite a number of statements made by the undersigned with which the Defendant takes issue. The grounds or bases upon which the Defendant relies to support his motion for recusal are not immediately apparent from the motion. It can be gleaned from the motion, however, that the Defendant asserts the following bases: (i) the Defendant's status as a sovereign citizen; (ii) the undersigned's call for finality to this matter; (iii) having an evidentiary hearing a week after the first hearing where the Defendant was not given time to prepare; (iv) flipping the burden of proof; (v) interpretation of legal terms; (vi) subverting the rules on a motion for judgment on the pleadings; and (vii) overruling the Defendant's filings and objections. The Defendant, in his *Defendant's Submission of Points Prepared for Oral Argument on Motion to Recuse*, also recites the following bases upon which he asserts require the recusal of the undersigned: (i) Rush to Conclusion; (ii) Lack of Due Process; (iii) Shifting the Burden; (iv) Unreasonable Deadline; (v) Advocating for the Plaintiff from the Bench; (vi) Stated Standard vs. Applied Standard for Pro Se Filings; and (vii) Narrow Construction Reached the Substantive Analysis.

> The Court first notes that many of the Defendant's asserted grounds for recusal, including his due process grounds, are with regard to procedural issues. The Court also notes that the Court has already addressed, in detail, many of the Defendant's arguments with regard to the procedural posture of this case. In particular, the Defendant now asserts that the undersigned should recuse himself because the Court's adjudication of the motion for judgment on the pleadings was improper in that the motion was filed before the Defendant filed his answer. This Court has previously addressed this same issue in its October 2, 2025 *Memorandum Opinion and Order*. Importantly, the Defendant does not advance an argument that the Court should have reached a different conclusion if the procedure the Defendant suggests was taken.

Over the next seventeen pages, the trial court delineated and addressed each of Petitioner's contentions in detail. The court noted that many of Petitioner's procedural arguments had previously been addressed in the court's August 6, 2025 and October 2, 2025 orders and reiterated those conclusions in the order denying recusal. The court explained that it had fully considered Petitioner's motion to dismiss the action, "despite the untimely nature of the motion," and that the trial court had also fully considered Petitioner's untimely answer to the complaint. In response to Petitioner's contention that the court had blocked Petitioner from arguing his points during hearings, the trial court reminded Petitioner that the court maintained the authority to consider pre-trial motions without oral arguments. The chancellor articulated that the court had "given due leniency" to Petitioner "at every stage of this civil action" by reason of his *pro se* status.

Concerning Petitioner's allegation that he "did not have time to prepare for evidentiary matters," the trial court noted that the civil action had been pending for "approximately two years" before the first hearing and that nothing had prohibited Petitioner from conducting discovery during that time. Regarding Petitioner's assertion that he should have been able to cross-examine witnesses, the trial court explained that the instant action had been adjudicated on a motion for judgment on the pleadings and had not proceeded to trial, where Petitioner would have had the opportunity to cross-examine witnesses. With respect to Petitioner's complaints relative to the discovery process generally, the court concluded:

> The Defendant simply did not take advantage of any discovery mechanisms during the long pendency of this civil action. A person of ordinary prudence in the undersigned's position, knowing all of the facts known to the undersign[ed], would not find a reasonable basis for questioning the undersigned's impartiality by adjudicating this civil action on a motion for judgment on the pleadings—a process that is expressly permitted in the *Tennessee Rules of Civil Procedure* and does not entail the examining of witnesses—and by not proceeding to trial.

Addressing Petitioner's postulate that the trial court had improperly "shifted" the burden of proof regarding Petitioner's constitutional challenges, the trial court explained that the burden of proving Petitioner's affirmative defenses, "including the unconstitutionality of certain statutes," had always been Petitioner's burden. As such, the trial court clarified that when the court ordered Petitioner to "list the statutes that he asserts are unconstitutional to better allow the [trial court] to adjudicate his affirmative defenses," the court was not shifting the burden to Petitioner but instead was affording Petitioner "considerable lenience" in presenting his affirmative defenses without "the same being waived for failure to comply with the Tennessee Rules of Civil Procedure."

As to Petitioner's assertion that the chancellor should recuse himself because he had allowed the Attorney General to intervene in the action, the trial court further explained that once Petitioner had raised constitutional challenges to the respective taxation statutes at issue in the litigation, Tennessee Rule of Civil Procedure 24.04 required that the Attorney General be notified and permitted to intervene. Regarding Petitioner's claim that Rule 24.04 did not apply because the State of Tennessee was a party to the litigation from the outset, the trial court clarified that Knox County, Tennessee, and not the State of Tennessee, was the plaintiff in this complaint for delinquent real property taxes.

The trial court next addressed Petitioner's contention that the trial court had made improper comments regarding the finality of the action. The trial court explained that the action had "been languishing for over five years whereupon the same issues and principles of law and policy had been addressed, readdressed, and reiterated a number of times." The court expressed that it had considered Petitioner's arguments repeatedly over the course of the litigation such that a person of ordinary prudence in the trial court's position, knowing all of the facts, would not find a reasonable basis for questioning the judge's impartiality for "expressing a statement that this case, as does every case, deserves finality."

The trial court also considered Petitioner's assertion that the court had advocated for Knox County during the litigation by asking questions of Petitioner that had not been raised by Knox County during hearings. The trial court reminded Petitioner that the court maintains an "independent duty to evaluate" potential defenses in a lawsuit and that such questioning did not demonstrate partiality favoring Knox County over Petitioner. Regarding Petitioner's claim that the trial court demonstrated prejudice against Petitioner through its "interpretations of the real property taxation scheme," the court clarified that the interpretation of statutes is within the "province of the courts." The court quoted *Adams*, 674 S.W.3d at 879, for the proposition that "rulings adverse to the proponent of a recusal motion are not, standing alone, grounds for recusal."

Concerning Petitioner's "purported status as sovereign citizen," the trial court noted that Petitioner had nonetheless "affirmatively and repeatedly claimed ownership" of the Property in question throughout the lawsuit. As such, the trial court explained that its application of the statutory scheme for taxation to Petitioner—regardless of his status as a "sovereign citizen"—was not a sufficient basis for recusal. Turning to Petitioner's argument that the chancellor should recuse himself because Petitioner had filed a judicial complaint against him with the Tennessee Board of Judicial Conduct, the court explained that a judge "need not recuse himself merely because a litigant has filed a judicial complaint."

Upon conducting a *de novo* review of the recusal motion, the trial court's memorandum opinion denying the motion to recuse, and the entire record before us, *see* Tenn. Sup. Ct. R. 10B, § 2.01, we determine that Petitioner's recusal motion failed to establish a basis for recusal of the chancellor. Each of the allegations in the motion to

recuse stems from events and observations that occurred in relation to the underlying litigation. As such, Petitioner has not satisfied his burden to establish bias or prejudice arising from an "extrajudicial source." *See Adams*, 674 S.W.3d at 878-79 (explaining that the proponent of a motion to recuse "bears the burden of establishing that recusal is appropriate and that any alleged acts of bias or prejudice arise from extrajudicial sources rather than from events or observations during the litigation of the case.") (internal citation omitted); *Alley*, 882 S.W.2d at 821.

In his petition for recusal appeal, Petitioner advances the position that the trial court violated Petitioner's right to due process by conducting a hearing on the motion to recuse without allowing Petitioner to orally argue the motion. In support, Petitioner contends that the trial court "did not have the option, having scheduled the hearing, to then refuse the movant the opportunity to be heard meaningfully at that hearing." Petitioner offers no legal authority to support this assertion, and we have found none. Tennessee Supreme Court Rule 10B does not require that a trial court conduct a hearing on a motion to recuse. *See In re Samuel P.*, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at *7 (Tenn. Ct. App. Aug. 31, 2016) ("[N]othing in Rule 10B requires a trial judge to hold a hearing on a recusal motion."). Instead, Rule 10B § 1.03 provides that upon the filing of a motion to recuse, "the judge shall act promptly by written order and either grant or deny the motion." Courts in Tennessee have long held that when a motion is not dispositive of a case or necessary for appellate review, "due process is not offended by denial of the opportunity for the presentation of argument." *Jerkins v. McKinney*, 533 S.W.2d 275, 279 (Tenn. 1976). Petitioner's argument on this point is unavailing.

Petitioner also claims that the trial court's order denying recusal "rests on grounds that are internally contradictory with the trial court's own prior orders, with the trial court's own verbatim record, with the case caption, and with the Tennessee Rules of Civil Procedure." Petitioner then identifies what he perceives to be contradictions within the May 5, 2026 order denying recusal. However, each of Petitioner's allegations regarding contradictory statements stems from events and observations that occurred in relation to the underlying litigation. As such, Petitioner has again failed to establish bias or prejudice arising from an "extrajudicial source." *See Adams*, 674 S.W.3d at 878-79; *Alley*, 882 S.W. 2d at 821. Furthermore, upon our independent review, we discern no inconsistencies between the order and the record before us.

Petitioner further urges that the trial court made several "unsound" decisions and statements in the order denying recusal regarding whether Petitioner had waived certain arguments and defenses during the litigation. However, we note that although the trial court did recount in the order that Petitioner had failed to timely file his answer, affirmative defenses, and motion to dismiss the complaint, the court explained that it had nevertheless fully considered and addressed each of these filings to afford Petitioner proper leniency as a *pro se* litigant. Furthermore, as with Petitioner's claims of contradictory statements in the order denying recusal, Petitioner's waiver arguments arise from the underlying

litigation.  Therefore, Petitioner has not satisfied his burden to establish bias or prejudice of the chancellor arising from an "extrajudicial source" relative to his waiver argument. *See Adams*, 674 S.W.3d at 878-79; *Alley*, 882 S.W.2d at 821.

For the above-stated reasons, we affirm the trial court's order denying Petitioner's October 31, 2025 motion to recuse the chancellor.

## IV.  Conclusion

We affirm the trial court's May 5, 2026 order denying Petitioner's motion for recusal.  We reiterate that any issues raised by Petitioner on appeal that do not stem from the trial court's denial of his motion to recuse are beyond the scope of our review, and we therefore do not reach those issues in this Opinion.  *See Adkins*, 2021 WL 2882491, at *17 ("Under [Rule 10B], we may not review the correctness or merits of the trial court's other rulings[.]") (internal quotation marks and citations omitted).  Costs on appeal are assessed to the petitioner, Douglas Vernon.


s/Thomas R. Frierson, II

_____

THOMAS R. FRIERSON, II, JUDGE

- 10 -